UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

DALVON CURRY,

Defendant.

17-CR-103-LJV-HKS-7
DECISION & ORDER

## **INTRODUCTION**

On February 24, 2020, a jury convicted the defendant, Dalvon Curry, on all nine counts charged against him in the superseding indictment: one count of racketeering conspiracy; one count of narcotics conspiracy; one count of possession of a firearm in furtherance of a drug trafficking crime; two counts of murder in aid of racketeering activity; two counts of discharge of a firearm in furtherance of a crime of violence; and two counts of discharge of a firearm causing death in furtherance of a crime of violence. *See* Docket Item 597. The convictions stemmed from Curry's involvement in the CBL/BFL gang, including by selling drugs; the December 5, 2015 murder of Jaquan Sullivan; and the January 1, 2017 murder of Xavier Wimes.

On April 1, 2020, Curry moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, a new trial under Federal Rule of Criminal Procedure 33. Docket Item 660. He argues that the evidence was insufficient to convict him on all counts. *See id.* On May 6, 2020, the government responded, Docket Item 698, and on June 5, 2020, Curry replied, Docket Item 762. After the Court heard

oral argument on Curry's motions, *see* Docket Item 848, Curry filed two supplemental letters, Docket Items 854, 857; the government responded, Docket Item 875; and Curry replied, Docket Item 878.

For the following reasons, Curry's motions for a judgment of acquittal and for a new trial are denied.

## DISCUSSION

### I. RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

After a jury verdict, a defendant may challenge the sufficiency of the evidence presented at trial by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c)(1). Convincing a court to set aside a verdict, however, is no easy task. A jury's verdict will withstand a Rule 29 challenge so long as "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001). The court views the evidence in the light most favorable to the government, *see United States v. Coté*, 544 F.3d 88, 98 (2d Cir. 2008), and draws all inferences in the government's favor, *see United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991). And the court may not substitute its own judgment on credibility or the weight of the evidence for what the jury decided. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

#### A. RICO Conspiracy (Count 1)

Count 1 charged Curry with racketeering conspiracy. *See* Docket Item 596 at 1-11. To convict a defendant of racketeering conspiracy, the government need prove only

that the defendant "agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011) (internal quotation marks omitted). Notably, proof of a conspiracy to commit predicate acts is not required. *See United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987). In fact, the government must prove only that two racketeering acts were, or were intended to be, committed as part of the conspiracy—not that the defendant himself committed or agreed to commit any of the acts. *United States v. Yannotti*, 541 F.3d 112, 121-122 (2d Cir. 2008). And the government must establish that the defendant participated in some manner in the overall objective of the conspiracy. *Id.*

Curry argues that the evidence against him was insufficient to support his conviction on the racketeering conspiracy (as well as on Counts 2 and 3, discussed below) because "the government failed to prove [] that [] Curry agreed to join the racketeering scheme, and that he knowingly engaged in the scheme with the intent that its overall goals be effectuated." Docket Item 660 at 3. But contrary to Curry's assertion, the government offered more than enough evidence to support a rational juror's conclusion that Curry knowingly and willfully joined CBL/BFL and, through that involvement, participated in a racketeering conspiracy.

For example, multiple witnesses—including members of the CBL/BFL gang and Curry's girlfriend—identified Curry as a member of the gang. Moreover, Curry prominently identified himself as a member of CBL/BFL in the music videos that he produced and on his social media. The government also introduced evidence that Curry's usernames on social media included the initials "Dtw" and phrase "5gang"—two known identifiers of CBL/BFL gang membership.

And the gang itself was undoubtedly an enterprise engaged in racketeering activity. Many witnesses testified about drug trafficking by gang members and how other members helped to protect the territory where members of the gang, and only members of the gang, sold drugs. The gang was involved in turf wars with other gangs in and around the City of Buffalo, with shootings that became commonplace, eventually involving Curry himself. Indeed, the testimony at trial related numerous predicate acts—including drug sales, intimidation, and shootings—that promoted the gang and about which a rational juror might have found Curry conspired.

One witness—a former gang member himself—testified about the different roles that different members played:

> Q: Now, I want to ask you some questions about roles within the gang. Did everyone in the CBL/BFL gang have a role to play?
>
> A: Um-hum. Yes.
>
> Q: And generally speaking, what were some of those roles?
>
> A: You got some people that just work. You got people that sell drugs. You got shooters.
>
> Q: Were there guys that were able to get girls?
>
> A: Yes.
>
> Q: Were there guys in the gang that were rappers?
>
> A: Yes.

Docket Item 610 at 50. Based on the trial testimony, a rational juror might well have concluded that Curry was a "rapper[]," a "shooter[]," and sometimes a drug dealer.

The evidence demonstrated that Curry not only was a prominent member of CBL/BFL but that he actively supported the gang and benefited from his membership.

Curry produced rap music videos that promoted CBL/BFL, threatened rival gangs, and highlighted the gang's access to weapons; he posted about weapons and made threats on social media to intimidate rival gang members, such as by posting online photos and videos of him in rival gang territory; and he possessed and shared firearms with other gang members to help keep the gang safe and protect its territory. The government also introduced evidence that Curry benefited from his participation in CBL/BFL by being permitted to sell marijuana in its territory.

Based on all that, a rational trier of fact could have found that Curry knowingly participated in a racketeering conspiracy. *See Jackson*, 443 U.S. at 319; *Desena*, 260 F.3d at 154. This Court will not—indeed, it cannot—second guess the jury's verdict.

**B. Charges Related to Narcotics Conspiracy (Counts 2 and 3)**

Counts 2 and 3 charged Curry with narcotics conspiracy and possession of a firearm in furtherance of a drug trafficking crime. *See* Docket Item 596 at 11-13. "To prove [a narcotics] conspiracy, the government must show that the defendant agreed with another to commit the offense; that he 'knowingly' engaged in the conspiracy with the 'specific intent to commit the offenses that were the objects of the conspiracy'; and that an overt act in furtherance of the conspiracy was committed." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (quoting *United States v. Salameh*, 152 F.3d 88, 145-46 (2d Cir. 1998)). "[T]he 'existence of and participation in a conspiracy may be established through circumstantial evidence.'" *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984) (emphasis omitted) (quoting *United States v. Sanzo*, 673 F.2d 64, 69 (2d Cir. 1982)). "However, there must be some evidence from which it can reasonably

be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Id.*

To prove possession of a firearm in furtherance of a drug trafficking crime, the government must show that the defendant used or carried a firearm during and in relation to a drug trafficking crime or that he possessed a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Lewter*, 402 F.3d 319, 321-22 (2d Cir. 2005).

For some of the same reasons addressed above, the government offered enough evidence at trial to support the jury's convictions on Counts 2 and 3. Many witnesses, including CBL/BFL members and law enforcement, testified about the gang's drug trafficking. The proof at trial showed that Curry was a member of CBL/BFL; that he knew about CBL/BFL's drug trafficking; that he helped to protect the gang's territory in which it sold drugs; and that he supported CBL/BFL's broader efforts through social media and rap music. In fact, the jury heard testimony that Curry himself sold drugs in territory reserved for CBL/BFL members. The jury also heard that Curry possessed firearms, shared firearms with other gang members to keep themselves and their territory safe, and used firearms to promote the gang and his position in it.

The evidence therefore was more than sufficient to support the convictions on Counts 2 and 3.

**C. Charges relating to Xavier Wimes (Counts 7-9)**

Counts 7 through 9 charged Curry with murder in aid of racketeering activity, discharge of a firearm in furtherance of a crime of violence, and discharge of a firearm causing death in furtherance of a crime of violence. *See* Docket Item 596 at 16-18.

As this Court instructed the jury, before Curry could be found guilty on Counts 7 through 9, the government needed to prove that: (1) for the purpose of maintaining and increasing his position within CBL/BFL—an enterprise engaged in racketeering activity—Curry intentionally caused the death of Xavier Wimes, Docket Item 795 at 144-45, 152; (2) that Curry knowingly used and discharged a firearm during and in relation to that crime of violence, *id.* at 154-55; and (3) that in doing so, Curry caused Wimes's death "with malice aforethought," *id.* at 165-66.[1] The proof at trial was adequate to find all that beyond a reasonable doubt.

The proof at trial showed that on December 31, 2016, Curry and Wimes fought on social media and, during that fight, Curry made fun of Wimes's deceased cousin, a member of a rival gang. Later that night, Wimes attacked and injured Curry at a New Year's Eve party by hitting Curry in the head with a bottle. After CBL/BFL members attacked Wimes in retaliation, he barricaded himself in an apartment and eventually jumped out a window to escape. Meanwhile, a fellow CBL/BFL gang member retrieved a gun and told Curry that Wimes should not leave the party alive. Curry then took the gun and, after Wimes had jumped out the window and broken his leg, shot Wimes multiple times at close range. Days after killing Wimes, Curry posted on Facebook, "I put in the work. That's how I blew up."

Curry argues that the government did not sufficiently establish that he killed Wimes to maintain or increase his position in CBL/BFL. Docket Item 878-2 at 5. He says that "there were no rules or regulations within BFL/CBL gang, [and] members were

---

[1] The Court gave the same instructions—substituting Jaquan Sullivan for Wimes—with respect to Counts 4 through 6. Docket Item 795 at 144-45, 155-59, 165-66.

not expected to murder or commit any violent acts." *Id.* On the contrary, Curry argues, the "trial testimony proved that Wimes was killed because he hit [Curry] in the head with a bottle." *Id.*

Curry may well be correct that what immediately preceded and precipitated the shooting was Wimes's hitting him with a bottle. But the government still offered enough evidence for rational jurors to conclude that Curry killed Wimes because it was expected of him and to preserve his position in CBL/BFL. For example, the government introduced evidence that gang members engaged in violence against rival gangs and those who "took up" for rival gangs; that Wimes's deceased cousin was a member of a rival gang; and that the night Wimes was killed, Wimes defended his cousin by attacking Curry and, in doing so, "took up" for a rival gang.

Moreover, and even more to the point, Curry was encouraged by a fellow gang member to kill Wimes because Wimes had disrespected and embarrassed Curry in front of other gang members—something that would have hurt Curry's standing in CBL/BFL. Because of their dispute involving Wimes's cousin, Wimes struck Curry with a bottle and injured him in front of CBL/BFL gang members. Letting that pass without consequence would have diminished Curry in the eyes of his fellows. And a rational juror therefore could have found that Curry intentionally and unlawfully caused Wimes's death by shooting him for the purpose of maintaining and increasing his position within CBL/BFL.

The government was not required to prove that maintaining or increasing Curry's standing in CBL/BFL was his sole motive in killing Wimes. Rather, evidence is sufficient to show that a defendant committed a violent crime "for the purpose of maintaining and increasing [his] position [in an organization] . . . if the jury could properly infer that the

defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010) (citation omitted). The evidence was sufficient to meet that standard here and therefore adequate to support the guilty verdicts on Counts 7 through 9.

**D. Charges relating to Jaquan Sullivan (Counts 4-6)**

The only issue that gives the Court pause involves Counts 4 through 6 charging the murder of Jaquan Sullivan. Like Counts 7 through 9, these counts charged Curry with murder in aid of racketeering activity, discharge of a firearm in furtherance of a crime of violence, and discharge of a firearm causing death in furtherance of a crime of violence. Docket Item 596 at 13-16. What gives the Court pause is Curry's argument of self-defense.

The proof at trial showed that Sullivan and his gang, the Guys, were in a long-standing and violent feud with CBL/BFL; that members of CBL/BFL were in a so-called "shoot-on-sight" rivalry with Sullivan and the Guys; that Curry and Sullivan exchanged threats on social media—threats that escalated in the weeks leading up to Sullivan's killing; that Curry went into rival gang neighborhoods with weapons to assert his gang's power and courage and to provoke violence; and that Curry posted on social media about killing his rivals, predicting "ALOT [sic] OF HOMICIDES" in 2015. The government also introduced evidence that on the night of Sullivan's killing, Curry went into Sullivan's neighborhood with a gun; that when he saw Curry, Sullivan said "you boys know what time it is"; that Sullivan shot at Curry; and that Curry shot at Sullivan, including once in the back as Sullivan was running away.

Curry argues that he was justified; more precisely, he argues that the evidence was insufficient to show that he was not justified in shooting Sullivan. Docket Item 660 at 11-14, 16. As this Court instructed the jury, a person is justified in using deadly force against another under New York law[2] if: (1) the person using deadly force believed that it was necessary to defend himself or someone else from what he believed to be the use or imminent use of such force, and a reasonable person in his same position would have believed that, too; (2) the person using deadly force was not the initial aggressor of deadly force; (3) the person using deadly force could not have avoided using deadly force by safely retreating; and (4) the deadly force was not the product of a combat by agreement unauthorized by law. Docket Item 795 at 146-150; *see also* N.Y. Penal L. § 35.15. Curry argues that because he and Sullivan engaged in a gun fight, and because the evidence showed that Sullivan shot first, no rational juror could have found that Curry was not justified in defending himself. *See* Docket Item 660 at 16.

For several reasons, Curry's argument is unavailing. First, in New York, "[a] justification defense may be negated by proof that '[t]he physical force involved is the product of a combat by agreement not specifically authorized by law.'" *People v. Young*, 33 A.D.3d 1120, 1124, 825 N.Y.S. 147, 151 (3d Dep't 2006) (second alteration in original) (citing N.Y. Penal L. § 35.15[1][c]). A "combat by agreement" can be shown by evidence that the "defendant and the victim were members of 'rival groups that tacitly agreed, pursuant to an unwritten code of [] honor, that there would be mutual combat.'"

[2] New York law applies to the justification defense because Count 4 (like Count 7) charged murder under the New York Penal Law as the crime of violence in aid of racketeering. More specifically, Count 4 charged Curry with the murder of Jaquan Sullivan in aid of racketeering. Count 7 charged the same as to the murder of Xavier Wimes.

*Id.* (citing *People v. Russell*, 91 N.Y.2d 280, 288, 670 N.Y.S.2d 166 (1998)); *see also People v. Rosario*, 292 A.D.2d 324, 325, 740 N.Y.S.2d 23, 24 (1st Dep't 2002) (finding a combat-by-agreement jury instruction proper where the evidence showed that "shortly before the incident, [the] defendant's opponent used an expression constituting, in the local parlance, a challenge to a gunfight").

The government introduced enough evidence here to support the conclusion that Curry and Sullivan were members of warring gangs who "tacitly agreed" to a shoot-on-sight rivalry. Furthermore, the jury could have rationally found that Sullivan's saying "you boys know what time it is" was an "expression constituting . . . a challenge to a gunfight," *see id.*, or otherwise signaled the start of the shoot-on-sight rivalry in which Curry agreed to participate.

If the jury found that Curry and Sullivan were engaged in a shoot-on-sight rivalry or other combat by agreement, "[t]he fact that [Sullivan] may have fired first is irrelevant since the gun battle was illegal from its inception." *See id.* Moreover, to be justified in using deadly physical force, Curry needed to reasonably believe that such force was necessary to protect himself or someone else. A rational juror could have found that once Sullivan started running away, Curry no longer reasonably believed that continuing to shoot was necessary. And Nicole Yarid, M.D., the medical examiner who conducted the autopsy, testified that one of the shots Curry fired struck Sullivan in the back and exited Sullivan's front hip, Docket Item 749 at 33, 26, consistent with Curry's shooting Sullivan as he ran away.

What is more, contrary to Curry's argument, the jury was not required to find that Sullivan shot first and that Curry did not start the shooting. The only eyewitness to the

murder who testified at trial said that (1) she heard two men on the porch where Curry was standing arguing with a man in the street, (2) she heard gunshots that she believed came from the porch, and (3) the man in the street then ran away. Law enforcement found five cartridge cases on the porch and only three on the street in the path Sullivan ran, which might well be consistent with Curry's shooting Sullivan first and Sullivan's shooting back as he ran. And because Curry was on his friend's porch when Sullivan approached, the jury also might have concluded that Curry could have avoided using deadly force by safely retreating, thereby negating self-defense. *See* N.Y. Penal L. § 35.15(2)(a).

Although this issue presents a closer call than the others Curry raises, this Court cannot say that *no* rational juror could have rejected Curry's justification defense. Stated another way, a rational juror might well have found that Curry and Sullivan engaged in combat by agreement or that Curry was not justified in shooting Sullivan for some other reason.

Curry also argues that the government did not offer sufficient evidence to show that Curry killed Sullivan to increase his standing in CBL/BFL. *See* Docket Item 878-2 at 4. As noted above, evidence is sufficient to show that a defendant committed a violent crime "for the purpose of maintaining and increasing [his] position [in an organization] . . . if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Burden*, 600 F.3d at 220. The jury easily could have drawn that inference here.

For example, the evidence showed that CBL/BFL had a party to celebrate Sullivan's death and Curry's role in the shooting; that CBL/BFL members who had taunted and disrespected Curry before Sullivan's death no longer did so and indeed respected him afterward; and that the month after Sullivan's death Curry posted on social media that he now "Run[s] The Guyz," Sullivan's gang. Moreover, some of the same reasons that the Wimes shooting maintained or increased Curry's standing in CBL/BFL, *see supra*, apply here. In sum, the evidence was sufficient to support the convictions involving Sullivan's death.

## II. RULE 33 MOTION FOR A NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court should grant a new trial motion if it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (quotation omitted). When considering a motion for a new trial, a district judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Id.* (quotation omitted); *see also United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (stating that a court also may make determinations as to witness credibility). But while courts have greater discretion under Rule 33 than Rule 29, they still must exercise their authority under Rule 33 "sparingly" and only in "the most extraordinary of circumstances"; in other words, there must be a real concern that an innocent person may have been convicted. *Sanchez*, 969 F.2d at 1414.

The Court has no such concern here. For the reasons that this Court found the evidence sufficient on all nine counts, *see supra*, it does not find Curry's Rule 33 arguments persuasive. Curry therefore is not entitled to a new trial on those grounds, nor is he entitled to a new trial in the interest of justice.

## CONCLUSION

For all those reasons, Curry's Rule 29 and Rule 33 motions, Docket Item 660, are DENIED. The Court will set a date for sentencing.

SO ORDERED.

Dated: June 8, 2021
Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE